## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| MITCHELL BIRNER, | : |
| | : |
| | : Civil Action No. |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| KENSINGTON VANGUARD HOLDINGS, LLC, | : **COMPLAINT** |
| | : |
| Defendant. | : |
| | : |

Plaintiff, Mitchell Birner ("Birner"), by and through his attorneys, Brown Moskowitz & Kallen, P.C., for his Complaint against defendant, Kensington Vanguard Holdings, LLC ("Kensington"), alleges and says:

### PRELIMINARY STATEMENT

1.     This action arises from an employment agreement dated December 30, 2016 between plaintiff, Kensington's Senior Vice President of Business Development and a title insurance sales person, and the defendant ("Agreement"), a title insurance agency, pursuant to which Birner is to be paid a commission for all business he generated, including the business he originated with a certain, substantial real estate owner/management company ("Client"). But instead of paying plaintiff the commissions he has earned and will earn in the future with respect to the Client's transactions, defendant has appropriated the Client's business that plaintiff originated and has diverted that business to a joint venture that Kensington recently formed with the Client ("Joint Venture"). Based upon its participation in the so-called "Joint Venture," defendant will now pocket a substantial portion of the commissions to which plaintiff is entitled,

with the balance of those commissions being "kicked-back" to the Client in consideration of its business.

2.      Defendant has repudiated its Agreement with plaintiff and has refused to pay certain agreed-to commissions that have already been earned by Birner. More specifically, defendant has diverted from plaintiff to the Joint Venture commissions having a value in excess of $200,000.

3.      Upon information and belief, the defendant's Joint Venture with the Client may violate the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601 et seq. and state laws including various state "mini-RESPA" statutes including, without limitation, N.Y. Ins. Law § 6409(c), and various state laws prohibiting commercial bribery, unfair competition and consumer fraud.

4.      For example, N.Y. Ins. Law establishes title insurance premiums and prohibits title companies like the defendant from paying "referral fees" or kick-backs to generate business. Similarly, because many states including, for example, New Jersey, N.J.S.A. 17:29A-6, are "filed rate" jurisdictions, the payment of nominal "referral fees" or kick-backs effectively misrepresents to various state insurance regulators the actual rate that is being charged to the customer. The purported Joint Venture entered between defendant and the Client appears to be a sham -- a transparent effort to kick-back title insurance fees to a client -- here at the plaintiff's expense.

5.      Defendant's repudiation of the Agreement and diversion to the Joint Venture of transactions and business he originated, and the diversion to the Joint Venture of the commissions owed to plaintiff with respect to those transactions, constitutes the defendant's breach of the Agreement, a violation of the covenant of good faith and fair dealing owed to plaintiff, a violation of New York Labor Law ("NYLL"), and conversion.

2

**THE PARTIES**

6.      Plaintiff is a United States citizen domiciled in the State of Florida. Birner resides in Palm Beach Gardens, Florida.

7.      Upon information and belief, defendant is a New Jersey limited liability company with its principal place of business located in New York, New York. Upon information and belief, in or about 2022, Kensington was acquired by Truist Financial Corporation ("Truist"). Upon information and belief, Truist is a North Carolina Corporation with its principal place of business located in Charlotte, North Carolina.

**JURISDICTION**

8.      This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the parties are citizens of different States and the amount in controversy, exclusive of costs, exceeds the sum or value of $75,000.

**VENUE**

9.      Venue is proper in this judicial District because it is where a substantial part of the events giving rise to plaintiff's claims occurred (28 U.S.C. § 1391(b)) and, as set forth in the Agreement, it is the agreed-upon venue for resolution of any dispute between the parties concerning plaintiff's employment and the Agreement.

10.     The Court has personal jurisdiction over defendant because New York is its principal place of business, the parties agreed to resolve any dispute concerning plaintiff's employment here, defendant transacts business in New York within the meaning of CPLR 302(a), and plaintiff's claims arise from defendant's activity in this jurisdiction.

## <u>ALLEGATIONS COMMON TO ALL COUNTS</u>

11.     On or about December 30, 2016, plaintiff and defendant entered into the Agreement, which was later amended, effective January 29, 2020, and amended a second time, effective March 1, 2022. A copy of the Agreement and amendments thereto is annexed hereto as **Exhibit A**.

12.     By the Agreement, defendant undertook to pay to plaintiff a substantial commission "from <u>any</u> transactions procured and referred to the Company via the Kensington Vanguard platform solely by the Executive." Agreement, ¶ 2 (emphasis added).

13.     Defendant hired plaintiff in December 2016 because Birner was and is a highly successful title insurance salesperson and, as a result, has and continues to enjoy well-established business relationships within the real estate industry, including with lenders, mortgage brokers, real estate developers, investors and real estate agents. As a product of more than thirteen years of service in the industry, his commitment to client service, and his excellent reputation, plaintiff has had and continues to have a very substantial client base. Plaintiff has and continues to originate very substantial business for the benefit of the defendant, his employer.

14.     In order to avoid paying plaintiff's commission on the Client's business, defendant engaged in a scheme not only to divert the agreed-to commission payment to which plaintiff is entitled with respect to the Client, but it appears that defendant has and/or may be planning to use similar "joint ventures" as the purported means to appropriate the clients and the books of business that plaintiff and other business development associates have developed during their careers.

15.     By creating joint ventures with the "clients" of its employees who have recurring title insurance needs, a title insurer like defendant could effectively "squeeze-out" the business development associate through a "joint venture" that is established to facilitate the payment of a

prohibited referral fee or kick-back to the client in exchange for its business. In that circumstance, title agencies could convert the business of their business development associates and pay kick-backs to clients rather than pay the commissions due to their business development associates.

16.     Upon information and belief, the defendant formed the Joint Venture with the Client. After plaintiff originated the Client's business and brought the Client's substantial business to defendant -- premiums in excess of $3 million over the course of the last four (4) years -- defendant, through the newly-formed Joint Venture, diverted the Client's business to the Joint Venture.

17.     Defendant has already diverted from plaintiff to the Joint Venture commissions due under the Agreement in the principal amount in excess of $200,000, and has made it clear that it will continue to do so without regard to the Agreement or whether the Joint Venture is lawful.

18.     Defendant has repudiated the Agreement and has diverted to the Joint Venture the commissions due to plaintiff on the Client's transactions notwithstanding Kensington's continuing obligations under the Agreement.

19.     Upon information and belief, the Joint Venture itself is a sham and the defendant, just as it did before, continues to perform all of the indemnity and processing services it performed for the Client before the formation of the supposed Joint Venture. The Joint Venture is an artifice designed to make unlawful payments for the referral of title insurance business in violation of RESPA and State law, including the laws of New York and New Jersey.

### AS AND FOR A FIRST CAUSE OF ACTION
**(Breach of Contract)**

20.     Plaintiff repeats and realleges each of the allegations contained in his Complaint as if set forth fully herein.

21.     Under the Agreement, defendant has been and remains obligated to pay plaintiff commission on any transactions originated by plaintiff including, without limitation, the Client's business. To avoid paying the commissions due to Birner, defendant has diverted the Client's business to the Joint Venture.

22.     Defendant has breached its payment obligations under the Agreement and has appropriated the commission payments due and to become due to plaintiff for its own benefit and for the unlawful benefit of the Client.

23.     Plaintiff fully performed all of his obligations under the Agreement. Defendant has repudiated and breached the Agreement. Defendant, moreover, in response to the plaintiff's assertion of his rights, retaliated against Birner by, among other things, falsely alleging that he had harassed and/or been abusive to company employes.

24.     As a result of defendant's repudiation and breach of the Agreement, plaintiff has and will be injured and deprived of his right under the Agreement to the commissions presently due and owing and to become due and owing with respect to the Client's transactions.

25.     At present, plaintiff is entitled to the principal amount of at least $200,000 in the earned commissions that defendant has diverted to the Joint Venture, together with interest.

26.     Plaintiff is also entitled to all commissions due and owing on the Client's future business with defendant.

**WHEREFORE**, plaintiff, Mitchell Birner, demands Judgment against defendant, Kensington Vanguard Holdings, LLC, as follows:

(i) Awarding damages in the amount to be determined at trial representing the full value of all commissions due and owing, and to become due under the Agreement in connection with the Client's transactions and the diversion of those commissions

from plaintiff to the Joint Venture, presently the principal amount of at least $200,000;

(ii) Pretrial interest;

(iii) Costs of suit; and

(iv) Such further and additional relief as is just and proper.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

27.     Plaintiff repeats and realleges each of the allegations contained in his Complaint as if set forth fully herein.

28.     Defendant's conduct constitutes a breach of the covenant of good faith and fair dealing implied in every contract. The covenant requires that neither party to a contract will do anything that injures the right of the other to receive the full benefit of the parties' bargain or contract. By forming and entering into the nominal Joint Venture for the purpose of kicking-back referral fees to the Client, defendant intended and acted to avoid the payment obligations owed to plaintiff under the Agreement, and to appropriate plaintiff's Client by diverting its valuable business to the Joint Venture.

29.     As part of its duty of good faith and fair dealing, defendant is obligated to refrain from the use an unlawful device or subterfuge as a means to avoid the commission payment obligations owed to plaintiff under the Agreement.

30.     As set forth above, defendant has flouted its covenant of good faith and fair dealing.

31.     Defendant's wrongful and bad faith actions constitute a willful and intentional evasion of the parties' Agreement that are not expressed by, reserved in, or otherwise contemplated by the written terms and conditions of the Agreement.

32.     As a direct and proximate result of the defendant's breach of the implied covenant of good faith and fair dealing, plaintiff has been damaged.

**WHEREFORE**, plaintiff, Mitchell Birner, demands Judgment against defendant, Kensington Vanguard Holdings, LLC, as follows:

(i)   Awarding damages in the amount to be determined at trial representing the full value of all commissions due and owing, and to become due under the Agreement in connection with the Client's transactions and the diversion of those commissions from plaintiff to the Joint Venture, presently the principal amount of at least $200,000;

(ii)  Pretrial interest;

(iii) Costs of suit; and

(iv)  Such further and additional relief as is just and proper.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Violation of New York Labor Law)

33.     Plaintiff repeats and realleges each of the allegations contained in his Complaint as if set forth fully herein.

34.     Defendant is an employer within the meaning of New York Labor Law § 190(3).

35.     Plaintiff is an employee within the meaning of New York Labor Law § 190(2).

36.     Pursuant to the terms of the Agreement, the commission compensation due and owing to plaintiff constitutes wages earned by plaintiff within New York Labor Law § 190(1).

37.     Defendant violated New York Labor Law § 193 by willfully withholding plaintiff's wages, apparently doing so at the behest and/or direction of the Client.

38.     As a result of the foregoing, plaintiff has been damaged.

**WHEREFORE**, plaintiff, Mitchell Birner, demands Judgment against defendant, Kensington Vanguard Holdings, LLC, as follows:

(i) Awarding damages in the amount to be determined at trial representing the full value of all commissions due and owing, and to become due under the Agreement in connection with the Client's transactions and the diversion of those commissions from plaintiff to the Joint Venture, presently the principal amount of at least $200,000;

(ii) Pretrial interest;

(iii) Attorneys' Fees and costs of suit; and

(iv) Such further and additional relief as is just and proper under the New York Labor Law.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Conversion)

39.      Plaintiff repeats and realleges each of the allegations contained in his Complaint as if set forth fully herein.

40.      In or about late March or April 2024, defendant converted the commission payments due and owing to plaintiff with respect to certain Client transactions plaintiff originated -- Apollo refinancing, Wilmarco and Mahwah Portfolio. Upon information and belief, those transactions, including the underwriting and closing, were processed by Kensington's personnel in New York City. The principal amount of commission payments due to plaintiff with respect to those transactions, total more than $200,000.

41.      Defendant has repudiated the Agreement, disregarded governing anti-kick-back law concerning title insurance, as well as New York labor law, in diverting the commissions earned by plaintiff to the so-called Joint Venture.

42.     Defendant's actions constitute a high degree of moral turpitude and demonstrate wanton dishonesty because the converted funds were diverted to the unlawful Joint Venture formed by defendant and the Client to enrich themselves at plaintiff's expense.

**WHEREFORE**, plaintiff, Mitchell Birner, demands Judgment against defendant, Kensington Vanguard Holdings, LLC, as follows:

(i)  Awarding damages in the amount to be determined at trial representing the full value of all commissions due and owing, and to become due under the Agreement in connection with the Client's transactions and the diversion of those commissions from plaintiff to the Joint Venture, presently the principal amount of at least $200,000;

(ii) Pretrial interest;

(iii) Punative damages;

(iv) Costs of suit; and

(v)  Such further and additional relief as is just and proper.

**BROWN MOSKOWITZ & KALLEN, P.C.**
Attorneys for Plaintiff, Mitchell Birner


By: */s/ Kenneth L. Moskowitz*
         Kenneth L. Moskowitz

Dated:  April 11, 2024

Kenneth L. Moskowitz, Esq.
**BROWN MOSKOWITZ & KALLEN, P.C.**
17 State Street, Suite 4000
New York, New York 10004
P: (973) 376-0909
F: (973) 376-0903
Attorneys for Plaintiff, Mitchell Birner