UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

MITCHELL BIRNER,

        Plaintiff,

    -v-                                   No.  24-CV-2743-LTS-JW

KENSINGTON VANGUARD HOLDINGS,
LLC,

        Defendant.

--------------------------------------------------------x

<u>MEMORANDUM OPINION AND ORDER</u>

        Mitchell Birner ("Plaintiff") brings this action against Kensington Vanguard Holdings, LLC ("Defendant" or "Kensington"), asserting claims related to Defendant's purported breach of Plaintiff's employment agreement.  The Court has jurisdiction of this action pursuant to 28 U.S.C. section 1332.

        Pending before the Court is Defendant's motion to dismiss Plaintiff's complaint (docket entry no. 2 (the "Complaint")) pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted, and to strike certain portions of the Complaint as immaterial and scandalous pursuant to Federal Rule of Civil Procedure 12(f).  (Docket entry no. 13 (the "Motion").)  The Court has reviewed the parties' submissions thoroughly and, for the following reasons, Defendant's Motion is granted in part and denied in part.

<u>BACKGROUND</u>

        The following facts are drawn from the Complaint and the attached exhibit, and, to the extent they are well-pleaded, presumed true for purposes of this Motion.

On or about December 30, 2016, Plaintiff, a title insurance salesperson, entered into an employment agreement with Defendant, a title insurance agency. (Complaint ¶ 1; docket entry no. 2-1 (the "Agreement").) The Agreement was later amended, effective January 29, 2020, and amended a second time, effective March 1, 2022. (See Agreement at 13-22.) Pursuant to the Agreement, Plaintiff was to be paid a specified yearly salary, in addition to various bonuses and commission. (Id. at 10-11, 13-15, 17-19.) The commission provision of the Agreement reads as follows:

> **Commission.** Executive shall receive a commission equal to 50% of the Net Premium and Net Endorsements (exclusive of those with a promulgated set fee) resulting from any transaction procured and referred to the Company via the Kensington Vanguard platform solely by Executive. Commissions shall be payable on all national business where the Company is licensed and all work charges from unlicensed states on commercial transactions only. Out of state residential work where the Company is not licensed is not commissionable. All transactions shall be credited in accordance with standard Company policies and no commission shall be earned or payable until the applicable revenues have been received by the Company and the applicable transaction has closed.

(Id. at 10.) This language is followed by a stipulation that "[t]he Company reserves the right to negotiate and adjust any fee with any clients at any time in its sole discretion, whether based on volume of business or any other reason, regardless of whether such price adjustment reduces the Net Premium with respect to certain transactions." (Id. at 11.)

Plaintiff alleges that, in or about late March or April 2024, Defendant appropriated the business that Plaintiff originated with respect to "a certain, substantial real estate owner/management company," which Plaintiff identifies as the "Client," by diverting that business to a joint venture that Defendant recently formed with the Client. (Complaint ¶¶ 1, 40.) As a result of Defendant's participation in the joint venture, Plaintiff alleges, Defendant has and will continue to "pocket a substantial portion of the commissions to which plaintiff is entitled,

with the balance of those commissions being 'kicked-back' to the Client in consideration of its business."  (Id. ¶ 1.)  Plaintiff alleges that this conduct amounts to a repudiation of the Agreement, as Defendant "has refused to pay certain agreed-to commissions that have already been earned by [Plaintiff]," and that such commissions have a value to date in excess of $200,000.  (Id. ¶ 2.)  Plaintiff specifically alleges that this sum is attributable to three Client transactions he originated: "Apollo refinancing, Wilmarco, and Mahwah Portfolio."  (Id. ¶ 40.)

Plaintiff asserts that Defendant's "repudiation of the Agreement and diversion to the Joint Venture of transactions and business he originated, and the diversion to the Joint Venture of the commissions owed to [P]laintiff with respect to those transactions" constitutes breach of the Agreement, a violation of the covenant of good faith and fair dealing implied in the Agreement, a violation of New York Labor Law ("NYLL") section 193, and conversion. (Complaint ¶¶ 5, 37.)  Plaintiff filed his Complaint on April 11, 2024, outlining these four causes of action and seeking damages in the amount of his allegedly diverted commissions, "pretrial interest," attorneys' fees and costs, and, as an additional remedy for the fourth claim of conversion, punitive damages.  (Id. ¶¶ 25-26, 32, 38, 42.)

Defendant subsequently moved to dismiss the Complaint in its entirety and to strike certain allegations that Defendant asserts are immaterial and scandalous.  (See Motion.) This case was transferred to the undersigned on December 4, 2024.  The Motion is now fully briefed.

<u>DISCUSSION</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).  This requirement is satisfied when the factual

content in the complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," id. (citation omitted), but a complaint that contains only "naked assertions" or "a formulaic recitation of the elements of a cause of action" does not suffice. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "In deciding a Rule 12(b)(6) motion, a court assumes the truth of the facts asserted in the complaint and draws all reasonable inferences from those facts in favor of the plaintiff." Sara Designs, Inc. v. A Classic Time Watch Co. Inc., 234 F. Supp. 3d 548, 554 (S.D.N.Y. 2017) (citation omitted).

Defendant argues that Plaintiff has failed to plead a plausible factual basis for each of the four claims asserted in the Complaint. (Docket entry no. 14 ("Def. Mem.") at 1.) The Court reviews each claim in turn.

Count One – Breach of Contract

To state a claim for breach of contract under New York law, a plaintiff must allege: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." Ellington Credit Fund Ltd. v. Select Portfolio Servicing Inc., 837 F. Supp. 2d 162, 188-89 (S.D.N.Y. 2011) (quoting Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996)).

Defendant argues that the Complaint fails to sufficiently plead a cause of action for breach of contract because it lacks detail as to "(i) which transactions Plaintiff 'solely' originated (a prerequisite to any entitlement to a commission); (ii) when these alleged 'transactions' were 'procured,' 'referred to the Company' by Plaintiff, and/or closed; and (iii) when Defendant allegedly received the 'applicable revenues' (prerequisites to Defendant's obligation to pay a commission to Plaintiff)." (Def. Mem. at 4-5.) Plaintiff contends that the Complaint "identifies the relevant terms of the Agreement, his performance, [D]efendant's

breach[,]" including specific reference to three transactions that have generated commissions due and owing to Plaintiff, and the damages resulting from Defendant's breach.  (Docket entry no. 24 ("Pl. Mem.") at 4 n.2, 7-8.)  Defendant nevertheless asserts that these allegations are insufficient, noting that the specific referenced transactions "appear in the recitation of facts related to the conversion claim (Count IV)," rather than the breach of contract claim, and arguing that the Complaint still lacks sufficient detail as to "when or how Plaintiff 'solely' originated the Three Transactions or when Defendant received the 'applicable revenues' associated with them[.]" (Docket entry no. 26 ("Reply Mem.") at 1-2.)

The Court finds that Plaintiff's Complaint contains sufficient detail to plausibly assert a breach of contract claim.  As Plaintiff notes, he has pleaded (1) the existence of a contract, i.e., the Agreement and its amendments, (2) adequate performance of that contract (see, e.g., Complaint ¶ 13 ("Plaintiff has and continues to originate very substantial business for the benefit of [D]efendant, his employer."); id. ¶ 23 ("Plaintiff fully performed all of his obligations under the Agreement.")); (3) breach of the contract by Defendant, specifically breach of the commission provision by diversion of the predicate business transactions and failure to pay commission "due and owing," with three such transactions that Plaintiff "originated" listed and alleged to have been processed by Defendant's personnel (id. ¶ 40 ("In or about late March or April 2024, [D]efendant converted the commission payments due and owing to [P]laintiff with respect to certain Client transactions [P]laintiff originated -- Apollo refinancing, Wilmarco and Mahwah Portfolio.  Upon information and belief, those transactions, including the underwriting and closing, were processed by Kensington's personnel[.]")); and (4) damages of at least $200,000 to date as a result of Defendant's breach, (id. ¶¶ 25-26).  Plaintiff has provided sufficient detail as to "what was sold, approximate timing of the transactions and value of the

sales[.]"  Cf. Tal v. Computech Int'l, Inc., No. 21-CV-5773-JMA-SIL, 2022 WL 18135290, at *4

(E.D.N.Y. Dec. 1, 2022) (granting motion to dismiss breach of contract claim for post-separation

commissions where complaint "neglect[ed] to allege that post-employment commissions were

expressly provided for in the parties' agreement," and "provide[d] insufficient detail as to what

was sold, approximate timing of the transaction and the value of the sales," instead merely

alleging that plaintiff was owed $600,000), report and recommendation adopted, 2023 WL

112804 (E.D.N.Y. Jan. 5, 2023).  Nothing more is required at this stage.

      While best drafting practices counsel in favor of associating all relevant factual

allegations clearly with each claim,[1] the Court looks to the face of the Complaint in its entirety in

resolving a motion to dismiss under Rule 12(b)(6), and is guided by the principle that

"[p]leadings must be construed so as to do justice."  FED. R. CIV. P. 8(e); Henry v. Wyeth

Pharms., Inc., No. 05-CV-8106-WCC, 2007 WL 4526525, at *6 (S.D.N.Y. Dec. 19, 2007) ("To

dismiss some of plaintiff's claims because of the heading under which they were listed in the

Complaint would surely violate the command of [F.R.C.P. 8(e)].").  The fact that allegations

concerning the particular transactions that gave rise to the commissions allegedly "due and

owing to [P]laintiff" only appear in the recitation of facts for the conversion claim therefore is

not fatal to Plaintiff's breach of contract claim, as it is apparent that those allegations are relevant

to the breach of contract claim as well.  (See Complaint ¶ 40; Pl. Mem. at 7-8 (arguing that

pleading specifically identifies three transactions relevant to the breach of contract claim)); see

---

[1]    In the portion of the Complaint outlining his cause of action for breach of contract, Plaintiff does "repeat[] and reallege[] each of the allegations contained in his Complaint" (Complaint ¶ 20 (emphasis added)), indicating that the allegations preceding the breach of contract claim are incorporated, but the conversion claim was pleaded as a subsequent claim.  (See id. ¶¶ 39-42.)  The structure of the Complaint suggests that the omission of a cross reference or incorporation of the transaction-specific allegations was the result of an editing or scrivener's error.

also, e.g., Powe v. Cambium Learning Co., No. 08-CV-1963-JGK, 2009 WL 2001440, at *5 (S.D.N.Y. July 8, 2009) (finding that it would be "'excessively formalistic' to ignore any allegations in the [operative complaint] based on the heading under which they fall" (citation omitted)).

The Motion is therefore denied to the extent it seeks the dismissal of Plaintiff's breach of contract claim, Count I.

Count Two – Breach of Implied Covenant of Good Faith and Fair Dealing

The covenant of good faith of fair dealing, implied by all contracts governed by New York law, "embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." Fishoff v. Coty Inc., 634 F.3d 647, 653 (2d Cir. 2011) (internal quotation marks and citation omitted). "Where the contract contemplates the exercise of discretion, this pledge includes a promise not to act arbitrarily or irrationally in exercising that discretion." Id. "[A] defendant violates the implied covenant when it purposefully sabotages a plaintiff's ability to benefit under the contract." Thompson v. Advanced Armament Corp., LLC, 614 F. App'x 523, 525 (2d Cir. 2015) (gathering Second Circuit and New York state case law).

However, New York law "does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." Harris v. Provident Life & Acc. Ins. Co., 310 F.3d 73, 81 (2d Cir. 2002); see also Negrete v. Citibank, N.A., 187 F. Supp. 3d 454, 470 (S.D.N.Y. 2016) (dismissing breach of the implied covenant of good faith and fair dealing claim because it "relie[d] on no facts distinct from the breach of contract claims"), aff'd, 759 F. App'x 42 (2d Cir. 2019).

Here, Defendant argues that Plaintiff cannot establish a breach of the implied covenant of good faith and fair dealing because (1) the allegations underpinning the factual basis of this claim "are indistinguishable from those supporting the breach of contract claim," rendering the breach of implied covenant claim duplicative, and (2) the claim is "predicated on Defendant's exercise of an unambiguous contractual right," i.e., the Agreement provision stipulating that Defendant "reserves the right to negotiate and adjust any fee with any clients at any time in its sole discretion, whether based on volume of business or any other reason, regardless of whether such price adjustment reduces the Net Premium with respect to certain transactions." (Def. Mem. at 6-7.)

In response, Plaintiff identifies separate conduct upon which its breach of implied covenant claim rests: the alleged appropriation of Plaintiff's client in connection with the purported joint venture, done in bad faith, as opposed to the mere non-payment of commissions owed for transactions procured and referred to Defendant solely by Plaintiff. (Pl. Mem. at 10-11; Compare Complaint ¶ 22 (alleging, in support of Plaintiff's breach of contract claim, that Defendant "has breached its payment obligations under the Agreement and has appropriated the commission payments due and to become due to [P]laintiff" (emphasis added)), with id. ¶ 28 (alleging, in support of Plaintiff's breach of implied covenant claim, that Defendant "intended and acted to avoid the payment obligations owed to [P]laintiff under the Agreement, and to appropriate [P]laintiff's Client by diverting its valuable business to the Joint Venture" (emphasis added)).

The Court finds that Plaintiff has pleaded the factual basis of the good faith and fair dealing claim sufficiently. As Plaintiff has alleged a separate predicate for the breach of implied covenant claim, the claim does not necessarily stand or fall with his breach of contract

claim, and is therefore not duplicative as pleaded.  See, e.g., Grewal v. Cuneo, No. 13-CV-6836-RA, 2015 WL 4103660, at *11 (S.D.N.Y. July 7, 2015) (finding breach of implied covenant claim to be sufficiently distinct from breach of contract claim where conduct underlying the former was defendants' alleged efforts "to subvert and expropriate [plaintiff's] work," done "in bad faith, and that—but for this subversion and expropriation—[plaintiff's] work would have resulted in fees"); Kapsis v. Am. Home Mortg. Servicing Inc., 923 F. Supp. 2d 430, 452 (E.D.N.Y. 2013) ("[The implied] covenant is violated when a party promises commissions or profits and then does not act in good faith to permit such commissions or profits to be earned, thereby depriving the other party of the benefit of the bargain." (citation omitted)).

Defendant's second argument—that the challenged conduct constitutes Defendant's exercise of an unambiguous contract right—is also unavailing.  Defendant essentially contends that the relevant conduct, i.e., the alleged creation of a joint venture and diversion of business from one particular client, is authorized by the fee adjustment provision of the Agreement that reads: "The Company reserves the right to negotiate and adjust any fee with any clients at any time in its sole discretion, whether based on volume of business or any other reason, regardless of whether such price adjustment reduces the Net Premium with respect to certain transactions."  (Agreement at 11 (emphasis added).)  While this language may clearly grant Defendant discretion in negotiating and adjusting the monetary value of the fee (see id. (referring to the "right to negotiate and adjust any fee" as a "price adjustment")), it does not follow that this provision unambiguously granted Defendant the express authority to eliminate earned commissions by amending the "structure and terms" of a client's relationship with

Defendant, as Defendant argues.[2]  (Pl. Mem. at 7 ("This language grants unambiguously to Defendant the right to amend the structure and terms of its relationships with its clients, even where the amendment impacts the commissions otherwise due to the originating executive under the Agreement.")); cf., e.g., VTR, Inc. v. Goodyear Tire & Rubber Co., 303 F. Supp. 773, 775-776, 779-80 (S.D.N.Y. 1969) (finding no breach of implied covenant where defendant allegedly operated business in bad faith, with plaintiff's commission tied to net sales, because contract expressly granted defendant "uncontrolled discretion" in store operations, which decisions could be made "solely in the light of [defendant's] own interest and without any liability or obligation to [plaintiff] in connection therewith"); In re Minpeco, 237 B.R. 12, 26-27 (S.D.N.Y. Bankr. 1997) (finding no breach of implied covenant based on defendant's purported failure to provide notice to debtor, where, inter alia, debtor expressly waived "prior notice, presentment, demand and protest" under the relevant contracts).

Moreover, even if the fee adjustment provision of the Agreement afforded Defendant the broad discretion that Defendant argues that it did, Defendant was still not free to exercise such discretion arbitrarily, capriciously, or, as Plaintiff alleges here, in a manner

---

[2]    As Plaintiff argues, where "there is a dispute over the meaning of the contract's express terms, there is no reason to bar a plaintiff from pursuing [a breach of contract claim and implied covenant claim] in the alternative," which is a further basis for rejecting Defendant's argument that Plaintiff's implied covenant claim must be dismissed as duplicative.  (Pl. Mem. at 12 (citing Spinelli v. Nat'l Football League, 903 F.3d 185, 200-203 (2d Cir. 2018))); see also Longhi v. Lombard Risk Sys., No. 18-CV-8077-VSB, 2019 WL 4805735, at *3 (S.D.N.Y. Sept. 30, 2019) (reasoning that breach of contract and breach of implied covenant claims can, "in any event," be pursued in the alternative where parties dispute meaning of express contractual terms).  Although Defendant argues that the Complaint "does not plead breach of the implied covenant in the alternative" (Reply Mem. at 2 n.3), Federal Rule of Civil Procedure 8(d) "offers sufficient latitude to construe separate allegations in a complaint as alternative theories, at least when drawing all inferences in favor of the nonmoving party as [courts] must do in" in a motion to dismiss posture.  St. John's Univ. v. Bolton, 757 F. Supp. 2d 144, 183-84 (E.D.N.Y. 2010) (quoting Adler v. Pataki, 185 F.3d 35, 41 (2d Cir. 1999)).

inconsistent with the reasonable expectations of the parties.  (See Complaint ¶ 31); Cordero v. Transamerica Annuity Serv. Corp., 39 N.Y.3d 399 (N.Y. 2023) (noting that the New York Court of Appeals has "consistently observed" that the implied covenant of good faith and fair dealing requires parties to perform under the contract in a reasonable manner, consistent with the parties' expectations under the contract); Parlux Fragrances, LLC v. S. Carter Enters., LLC, 204 A.D.3d 72, 92 (N.Y. App. Div. 1st Dep't 2022) ("We note that to the extent defendants were entitled to exercise discretion in the manner in which they performed their obligations under [the relevant contract provisions,] they were, under the covenant (and, by natural extension, under the license agreement itself) prohibited from acting arbitrarily, irrationally, or in bad faith." (citation omitted)).

   The Motion is therefore denied to the extent that it seeks dismissal of Plaintiff's claim for breach of the implied covenant of good faith and fair dealing, Count II.

Count Three – Violation of NYLL § 193

   As a third cause of action, Plaintiff asserts that Defendant violated NYLL section 193 ("Section 193") "by willfully withholding [P]laintiff's wages," i.e., the "commission compensation due and owing to [P]laintiff[.]"  (Complaint ¶¶ 36-37.)  Section 193 prohibits an employer from "mak[ing] any deduction from the wages of an employee," except certain limited deductions specified therein.  N.Y. LAB. LAW § 193.  Defendant argues that this claim must fail because the "wholesale withholding of wages," or, in other words, Defendant's "failure to pay" Plaintiff the commissions he alleged to be "due and owing," does not constitute a "specific deduction from wages" for purposes of Section 193.  (Def. Mem. at 8-9 (citing Goldberg v. Jacquet, 667 F. App'x 313, 314 (2d Cir. 2016); Dreni v. PrinterOn Am. Corp., 486 F. Supp. 3d

712, 728 (S.D.N.Y. 2020); <u>Komlossy v. Faruqi & Faruqi, LLP</u>, No. 15-CV-9316-KPF, 2017 WL

722033, at *15 (S.D.N.Y. Feb. 23, 2017), <u>aff'd</u>, 714 F. App'x 11 (2d Cir. 2017)).)

   As highlighted in Plaintiff's briefing, however, Section 193 was amended in 2021

as part of the No Wage Theft Loophole Act ("NWTLA") to address the very argument advanced

by Defendant, and Defendant cites case law that predates the NWTLA or case law that relies on

pre-NWTLA precedent.  No Wage Theft Loophole Act ("NWTLA") (Laws of New York, 2021,

ch. 397) (codified as amended N.Y. LAB. LAW §§ 193, 195); (Def. Mem. at 8-9 (citations

omitted); Reply Mem. at 5 (citing <u>Raparthi v. Clark</u>, 186 N.Y.S.3d 623, 625 (N.Y. App. Div. 1st

Dep't 2023).)  The NWTLA specifically added a new subdivision to Section 193, which reads:

"There is no exception to liability under this section for the unauthorized <u>failure to pay wages,</u>

<u>benefits or wage supplements</u>."  N.Y. LAB. Law § 193(5) (emphasis added).  In enacting the

NWTLA, the New York State Legislature sought to "clarify for the courts once and for all that

wage theft remains completely and without exception in violation of statute and all employees

are entitled to full wages, benefits and wage supplements earned," citing <u>Ryan v. Kellogg</u>

<u>Partners Inst. Servs.</u>, 19 N.Y.3d 1 (N.Y. 2012) as an example of a proper application of Section

193.  NWTLA § 1.

   In <u>Ryan</u>, the plaintiff alleged that his employer had failed to pay him "wages" as

defined by NYLL section 190 ("Section 190"), specifically, a bonus "expressly link[ed]" to his

"labor or services personally rendered[,]" which was "guaranteed and non-discretionary as a

term and condition of his employment."  <u>Ryan</u>, 19 N.Y.3d at 3.  Because the bonus properly

constituted "wages" within the meaning NYLL section 190, the New York Court of Appeals

found that the defendant's failure to pay the bonus violated Section 193.  <u>Id.</u>  In citing this case

with approval, the New York State legislature described the decision as having correctly found

"that [the defendant-employer's] <u>neglect</u> to pay [a] sum that constitute[d] a 'wage' violated [S]ection 193." NWTLA § 1 (emphasis added).

Here, as in <u>Ryan</u>, Plaintiff alleges that Defendant failed to pay him "wages" as defined in Section 190—specifically, commissions due and owing under the Agreement—and asserts that such failure constitutes a violation of Section 193. (Complaint ¶¶ 33-38.) Defendant does not dispute Plaintiff's assertion that such commissions constitute Section 190 "wages," and Defendant's argument that the "wholesale withholding" of such commissions does not fall within the meaning of "deduction" under Section 193 must fail in light of the NWTLA's clarification that Section 193 encompasses claims against employers for <u>any</u> unpaid "wages," as defined in Section 190. <u>See</u> N.Y. LAB. LAW § 193(5) ("There is <u>no exception</u> to liability under this section for the <u>unauthorized failure to pay</u> wages, benefits or wage supplements." (emphasis added)); <u>see also</u>, e.g., <u>Samuels v. Urb. Assembly Charter Sch. for Comput. Sci.</u>, No. 23-CV-1379-RA, 2024 WL 4008165, at *16 (S.D.N.Y. Aug. 30, 2024) (explaining that courts "previously required a plaintiff to 'allege a specific deduction from wages and not merely a failure to pay wages'" for a Section 193 claim, but the NWTLA clarified that "'[t]here is no exception to liability . . . for the unauthorized failure to pay wages, benefits or wage supplements'" (citations omitted)); <u>Gunthorpes v. Im. Gr., LLC</u>, 21-CV-5140-ARR-RML, 2024 WL 2031191, at *5 (E.D.N.Y. Apr. 11, 2024) (explaining that, prior to the NWTLA, "the prevailing view was that a wholesale withholding of wages was not a 'deduction' within the meaning of Labor Law § 193" (internal quotation marks and citations omitted)), <u>report and recommendation adopted</u>, 2024 WL 2022688 (E.D.N.Y. May 7, 2024).

Defendant's Motion is therefore denied to the extent it seeks dismissal of Plaintiff's claim under Section 193, Count III.

Count Four – Conversion

Under New York law, "'[c]onversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights.'" Thyroff v. Nationwide Mut. Ins. Co., 460 F.3d 400, 403-404 (2d Cir. 2006) (citation omitted). To establish a conversion claim, a plaintiff must prove that: "(1) the property subject to conversion is a specific identifiable thing; (2) plaintiff had ownership, possession or control over the property before its conversion; and (3) defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights." Moses v. Martin, 360 F. Supp. 2d 533, 541 (S.D.N.Y. 2004) (internal quotation marks and citation omitted). While New York law "recognizes an action for conversion of money," a plaintiff must "have 'ownership, possession or control of the money' before its conversion." Komlossy, 2017 WL 722033, at *10 (citation omitted). In addition, "an action for conversion of money will lie [only] where 'there is a specific, identifiable fund and an obligation to return or otherwise treat in a particular manner the specific fund in question.'" The High View Fund, L.P. v. Hall, 27 F. Supp. 2d 420, 429 (S.D.N.Y. 1998) (citation omitted); see also Fin. Techs. Int'l, Inc. v. Smith, 247 F. Supp. 2d 397, 413 (S.D.N.Y. 2002) ("[C]onversion claims may be based on money only if the plaintiff has a right to the immediate possession of a specific, identifiable amount." (citation omitted)).

Furthermore, under New York law, "[a] conversion claim may only succeed if the party alleges a wrong that is distinct from any contractual obligations." Command Cinema Corp. v. VCA Labs. Inc., 464 F. Supp. 2d 191, 199 (S.D.N.Y. 2006) (citation omitted). If the plaintiff can recover punitive damages under a conversion claim and cannot recover punitive damages under a breach of contract claim, the punitive damages "constitute unique recovery under the

conversion claim," meaning that the claim is <u>not</u> duplicative of the breach of contract claim.

<u>Westcon Grp., Inc. v. CCC Technologies, Inc.</u>, No. 19-CV-02303-PMH, 2022 WL 4134578, *5

(S.D.N.Y. Sept. 12, 2022) (citing <u>Fraser v. Doubleday & Co.</u>, 587 F. Supp. 1284, 1289

(S.D.N.Y. 1984)).

        Defendant advances two arguments as to why Plaintiff's conversion claim should

fail: (1) the conversion claim is duplicative of Plaintiff's breach of contract claim, because "the

lone basis for Plaintiff's conversion claim is the conclusory allegation that Defendant diverted

commissions purportedly due to Plaintiff under the Agreement . . . and Plaintiff 'seek[s] only

damages for the conversion in an amount equal to the amount [he] seek[s] for breach of

contract.'" (Pl. Mem. at 9); and (2) a conversion claim must fail where the plaintiff is "seeking to

enforce an 'obligation to pay'" because the plaintiff is, in that case, "'essentially seeking

enforcement of the contract terms'" rather than vindicating a property interest held or controlled

by the plaintiff.  (<u>Id.</u> at 9-11.)  As to Defendant's second argument, Plaintiff contends that he is

not just seeking to enforce a contractual right, but also to enforce his extra-contractual right to

receive payment under the post-NWTLA Section 193, and that, in any case, courts have allowed

conversion claims for the improper withholding of an employee's wages prior to the NWTLA.

(Def. Mem. at 14-17.)  Plaintiff does not dispute that the factual basis of his conversion claim is

identical to that of his breach of contract claim, but argues that, because his conversion claim

seeks punitive damages, which he cannot recover under his breach of contract claim, the

conversion claim is not duplicative.  (<u>Id.</u> at 17-18.)

        Plaintiff is correct that "[t]he improper withholding of an employee's wages can

support a conversion claim."  <u>See</u>, <u>e.g.</u>, <u>Short v. Churchill Ben. Corp.</u>, No. 14-CV-4651-MKB,

2016 WL 8711349, at *21 (E.D.N.Y. Apr. 8. 2016) (collecting cases); <u>Doo Nam Yang v. ACBL</u>

<u>Corp.</u>, 427 F. Supp. 2d 327, 341-42 (S.D.N.Y. 2005). Plaintiff has, however, failed to sufficiently plead "a specific, identifiable fund and an obligation to return or otherwise treat in a particular manner the specific fund in question." <u>Hall</u>, 27 F. Supp. 2d at 429; (Reply Mem. at 7-8).

In the case of <u>Guy Carpenter & Co., LLC v. Lockton RE, LP</u>, 10-CV-4932-CM-KNF, 2010 WL 4449048 (S.D.N.Y. Nov. 4, 2010), for example, the court found that the plaintiff, a reinsurance broker, had sufficiently pleaded a cause of action for conversion for commissions (two reinsurance brokerage fees) where the plaintiff had alleged that (1) the broker agreements specified the conditions precedent to the full brokerage fee becoming due and owing; (2) the specific date on which the two brokerage fees at issue became due and owing pursuant to those agreements had passed; (3) the two entities that owed plaintiff commissions were to remit their quarterly reinsurance premiums directly to their broker, plaintiff, and, pursuant to industry custom, plaintiff was to deduct a fixed percentage and pay the balance to the reinsurer; and (4) before the full commissions had been paid, the two entities left plaintiff for another broker, defendant, who was then allegedly under a legal duty to deduct and remit to plaintiff the outstanding unpaid commissions from the remaining premium payments. (<u>Id.</u> at *3-6.) The court found that the plaintiff had sufficiently alleged a "specific, identifiable fund and an obligation to return or otherwise treat in a particular manner the specific fund in question," having alleged that the commissions due and owing were "a specified percentage of an amount paid by [the two entities] in trust for further transmission to the reinsurer as premiums for coverage secured." <u>Id.</u> The court distinguished the facts at issue in the case before it from those in the case of <u>McCalla v. SUNY Downstate Med. Ctr.</u>, No. 03-CV-2633-JFB-RLM, 2006 WL 1662635 (E.D.N.Y. June 8, 2006), where a conversion claim had been dismissed "because the

[McCalla] plaintiff made only a generic assertion that defendant converted 'fees due' to plaintiff." Guy Carpenter & Co., LLC, 2010 WL 4449048 at *3 (citing McCalla, 2006 WL 1662635, at *9).

While Plaintiff has here identified three transactions based upon which the roughly $200,000 in commissions was due and owing, and alleged that those transactions were "processed" by Defendant's personnel in New York City, Plaintiff has not identified a specific fund comprised at least in part of such commissions and to which he had superior title. (See Complaint ¶¶ 11-19; 40-42); cf. also, e.g., Doo Nam Yang, 427 F. Supp. 2d at 341-42 (finding conversion claim to be properly asserted where plaintiff claimed that employer improperly retained deductions from plaintiff's issued paychecks (an "identifiable fund") and did not use the money deducted to pay taxes, nor return the money to plaintiff). The allegations in the Complaint are instead more analogous to those of McCalla, the case in which the plaintiff had merely alleged that he "rendered services, and that [defendant] failed to pay [him] as required" pursuant to an employment contract between the parties. McCalla, 2006 WL 1662635, at *9. As in McCalla, Plaintiff's failure to allege "a specific, identifiable fund with his money" and an obligation to return or otherwise treat in a particular manner the specific fund in question is fatal to his conversion claim. Id. (citing Hall, 27 F. Supp. 2d at 429).

Moreover, although Plaintiff is also correct that, if a plaintiff seeks damages for a conversion claim beyond those that are available for the breach of contract claim, e.g., punitive damages, the conversion claim may be found to be non-duplicative, Westcon Grp., Inc., 2022 WL 4134578, *5, the Court need not examine whether punitive damages might be available in the instant case because Plaintiff has failed to sufficiently plead the underlying claim for conversion.

The Motion is, accordingly, granted to the extent it seeks dismissal of Plaintiff's cause of action for conversion, Count IV.

Motion to Strike

Under Rule 12(f) of the Federal Rules of Civil Procedure, a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" on motion by a party where such motion was made "before responding to a pleading, or if a response is not allowed, within 21 days after being served with the pleading." "Motions to strike are generally disfavored, and should be granted only when there is a strong reason for doing so." Mazzola v. Roomster Corp., 849 F. Supp. 2d 395, 410 (S.D.N.Y. 2012) (citation omitted). "To prevail in such a motion, defendants must demonstrate that '(1) no evidence in support of the allegations would be admissible; (2) that the allegations have no bearing on the issues in the case; and (3) that to permit the allegations to stand would result in prejudice to the movant.'" Roe v. City of N.Y., 151 F. Supp. 2d 495, 510 (S.D.N.Y. 2001). Ultimately, "Rule 12(f) motions are left to the Court's discretion." Nachmany v. FXCM, Inc., No. 16-CV-225-DAB, 2020 WL 178413, at *8 (S.D.N.Y. Jan. 9, 2020) (citation omitted).

Defendant seeks to have stricken certain allegations concerning Defendant's statutory obligations under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. section 2601 et seq., and analogous "mini-RESPA" state statutes, including New York Insurance Law section 6409(c). (Def. Mem. at 11.) Defendant argues that, "[d]espite bringing no claim under RESPA, Plaintiff repeatedly injects inflammatory, false, and irrelevant allegations that Defendant's conduct may have violated the statute or its state-level analogues," and that such "speculative and baseless suggestions" are irrelevant and prejudicial. (Id.) Defendant, accordingly, seeks to have stricken: (1) the final clause of paragraph 1, which alleges that the

balance of commissions improperly redirected to Defendant's alleged joint venture will be "kicked-back" to the client with whom the venture was formed "in consideration of [the client's] business"; (2) the entirety of paragraphs 3 and 4, which allege, upon information and belief, that the alleged joint venture violates RESPA and its state law analogs; (3) the entirety of paragraph 15, which alleges that joint ventures created with appropriated clients in general can "squeeze out" the business development associate who originally secured the client; (4) the entirety of paragraph 19, which alleges that the joint venture is a sham and artifice designed to make unlawful payments in violation of RESPA and state law analogs, and that Defendant continues to perform all services it performed for the client before creation of the alleged joint venture; (5) the phrase "for the purpose of kicking-back referral fees to the Client" from paragraph 28, which describes Defendant's conduct in creating the alleged joint venture and asserts breach of the covenant of good faith and fair dealing based on that conduct; (6) the entirety of paragraph 29, which asserts that, "[a]s part of its duty of good faith and fair dealing, [D]efendant is obligated to refrain from the use [of] an unlawful device or subterfuge as a means to avoid the commission payment obligations owed to [P]laintiff under the Agreement"; (7) and the phrase "disregarded governing anti-kick-back law concerning title insurance" from paragraph 41, which otherwise alleges that Defendant has repudiated the Agreement, disregarded New York labor law, and diverted commissions earned by Plaintiff.  (Def Mem. at 11 n.1.)

Plaintiff argues that the motion to strike is meritless because "the scheme described in the Complaint plainly bears on all of [P]laintiff's substantive claims[,]" and that Defendant has failed to establish that such allegations are prejudicial.  (Pl. Mem. at 18-21 (emphasis in original).)  Plaintiff apparently uses the word "scheme" to refer to Defendant's alleged creation of a joint venture with a client referred to Defendant by Plaintiff, and subsequent

diversion of the client's business to the joint venture.  (Complaint ¶¶ 1, 16, 21.)  To the extent

that Plaintiff uses the term "scheme" in this fashion, it is unclear how allegations that the joint

venture arrangement "may" have violated federal and state RESPA statutes and "various state

laws prohibiting commercial bribery, unfair competition and consumer fraud[,]" have any

bearing on this action, where the only statutory claim asserted by Plaintiff in the Complaint is

violation of Section 193.  (See generally Complaint.)  Plaintiff is plainly able to plead facts

detailing Defendant's conduct and its motivations related to the joint venture arrangement

without speculative assertions that such conduct "may" have been prohibited by statutory

obligations not here at issue.

        Defendant has also established that the RESPA-related allegations are scandalous

and prejudicial.  As discussed, such allegations bear no material relationship to Plaintiff's

asserted claims, and Defendant additionally argues that "[c]ompliance with RESPA is critical to

Defendant's business" as a title insurance agency, meaning that such allegations "malign

Defendant's professional reputation as a conscientious and compliant organization."  (Def. Mem.

at 13.)  The Court therefore agrees that the "allegations threaten substantial prejudice to

Defendant in the form of unnecessary discovery costs and reputational harm[.]"  (Reply Mem. at

9; Def. Mem. at 12 ("[S]hould the Complaint survive Defendant's motion to dismiss, these

allegations would open the door to costly and pointless discovery regarding Defendant's

compliance practices[.]")); see, e.g., Boutsikakis v. Tri-Borough Home Care, Ltd., 15-CV-5833-

KAM-RML, 2017 WL 11718340, at *5 (E.D.N.Y. Aug. 14, 2017) (striking defense asserting

that plaintiff committed "egregious professional misconduct" where defendant had failed to

identify how such alleged violations bore on plaintiff's asserted claims, and the defense

"malign[ed] [plaintiff] professionally," both of which established prejudice to plaintiff (citation omitted)).

Accordingly, the following allegations in the Complaint are hereby ordered stricken:

- The entirety of paragraph 3;
- The first two sentences of paragraph 4;
- The second sentence of paragraph 19; and
- The phrase "disregarded governing anti-kick-back law concerning title insurance" from paragraph 41.

The motion to strike is, however, denied to the extent it seeks to have stricken the final clause of paragraph 1, the final sentence of paragraph 4, the entirety of paragraph 15, the first sentence of paragraph 19, the phrase "for the purpose of kicking-back referral fees to the Client" from paragraph 28, and the entirety of paragraph 29. (See Def. Mem. at 11 n.1.) These portions of the Complaint provide context as to why Defendant and Plaintiff's client would be motivated to enter into a joint venture that results in Plaintiff losing out on commission fees, viz., to retain and divide such fees between themselves. See, e.g., Hoffman Motors Corp. v. Alfa Romeo S.p.A., 244 F. Supp. 70, 81-82 (S.D.N.Y. 1965) (rejecting motion to strike where "[m]any of the allegations claimed to be immaterial provide[d] a better understanding of the claim for relief by providing background facts . . . ."). These allegations also appear relevant at least as to Count II, breach of the implied covenant of good faith and fair dealing, in that they go to Defendant's intentions and purported lack of good faith in entering the joint venture. The Court therefore declines to strike these portions of the Complaint.

CONCLUSION

For the foregoing reasons, Defendant's Motion is denied to the extent it seeks dismissal of Counts I through III of the Complaint, but granted to the extent it seeks dismissal of

Count IV for conversion and striking of the above-specified allegations in Complaint.  Plaintiff is hereby directed to file an amended complaint, omitting the allegations ordered stricken, as detailed above.

Should Plaintiff wish to seek leave to amend the Complaint to remedy deficiencies identified above with respect to Plaintiff's dismissed claim for conversion, Count IV, or the stricken allegations, Plaintiff must file a motion within 30 days from the date of this Memorandum Order and Opinion.  The motion must comply with all federal, state, and local rules, including S.D.N.Y. Local Civil Rule 15.1.  Should Plaintiff fail to file a timely motion for leave to amend, Count IV shall be dismissed with prejudice.

This Memorandum Opinion and Order resolves docket entry no. 13.  This action remains referred to Magistrate Judge Jennifer E. Willis for general pretrial management.

SO ORDERED.

Dated: New York, New York
          March 31, 2025


                                                  /s/ Laura Taylor Swain
                                                  LAURA TAYLOR SWAIN
                                                  Chief United States District Judge